## The People *vs.* John Mitchell and others.

Superintendents of the poor have no authority or power to discharge the putative father of a bastard child from the obligation he has entered into with the town by giving a bond for the support of the child, without some compensation or equivalent which will effectually secure the support and maintenance of the child in the manner contemplated by the statute, or at least tend to assure such support.

The compromise and arrangement which the statute authorizes the superintendents of the poor to make with the putative father of a bastard child, must relate wholly to the support of the child, and in no respect to the depriving it of support.

If by the arrangement nothing is taken or secured for the support of the child, beyond contingency, the superintendents exceed their powers, and the discharge is void.

Where superintendents of the poor made no compromise with the putative father, or arrangement of any kind, for the support of the child; and he neither paid any thing, nor gave any obligation to pay any thing, or to keep and support the child himself; and the entire scope and effect of the proceeding was to deprive the mother of the right to the custody of the child, which both the common law and the statute secures to her, and in case she refused to relinquish it, to deprive the child of all the means of support which he had secured to it; *Held* that the superintendents had no power to discharge the putative father; and that his bond, given in pursuance of the order of filiation, still remained in full force, as though no discharge had ever been attempted.

The common law never gave the putative father of a bastard child any right to its custody; and no provision of our statute secures to him any such right.

A parol promise, by the putative father, to take and support the child, upon the condition that the mother shall give up the child to him, being qualified by a condition which neither party has the right to make, or the power to fulfill, as against the mother, is not valid or binding, for that reason, if otherwise unobjectionable.

A PPEAL from a judgment entered upon the report of a referee. In the year 1861, the defendant, John Mitchell, was arrested, upon the application of the overseers of the poor, of the town of Wolcott, Wayne county, charged with being the father of a bastard child, born of one Mary Rittiker, and which was chargeable to the town of Wolcott. After his arrest, and upon the 13th day of November, 1861, a trial or examination was had, and the court decreed that

the defendant, John Mitchell, was the putative father of such bastard child; upon which day the court made an order of filiation, requiring, among other things, that the defendant, John Mitchell, give a bond conditioned to pay the weekly sum of one dollar for the support of the child. This bond he gave, signed by the other defendants as his sureties. The defendant, John Mitchell, paid, from time to time, the amount required, up to the 5th day of August, 1863; after that time, the defendants refused payment on said bond. This action was commenced on the 10th day of January, 1864, by the overseers of the poor, of the town of Wolcott, to recover the penalty contained in the bond. There was due and unpaid at the time this suit was commenced, on the bond, the sum of about $23. The defense set up in the answer was a compromise, made by John Mitchell with the superintendents of the poor of Wayne county; relative to the support of the bastard child, and that thereupon the said superintendents then and there discharged the said John Mitchell from all liability for the support of such child, whereby the bond sued on was cancelled and discharged, &c. The referee, in addition to the facts above stated, found that on the 4th day of August, 1863, John S. Roe, Isaac Z. Hodges and Clark Philipps, the then duly elected and acting superintendents of poor in and for Wayne county, as such superintendents, made and entered into a compromise and arrangement with the said John Mitchell, as such putative father, in relation to the support of said bastard child, whereby they released him from further payment of the said weekly sum of one dollar, provided for in said bond, or any sum, provided the said John Mitchell would take said child into his possession and support it free from expense to said town or county; and the said John Mitchell agreed so to do; and whereby it was further then agreed between said superintendents and said John Mitchell, that said John Mitchell should be released from further payment under said bond, if said Mary Rittiker, now Mary Stage, would deliver up said child to him, said John Mitchell,

if she refused so to deliver up said child, then and in that case, said John Mitchell was upon such refusal also to be released from further payment on said bond ; that, pursuant to said compromise and arrangment, said John Mitchell called upon said mother of said child, Mary Stage, formerly Mary Rittiker, and informed her of the compromise and arrangements so made between said superintendents and himself, and demanded that said bastard child should be delivered into his custody, that he might thereafter support said child at his own cost and expense ; that the said mother declined and refused to deliver up or surrender said child to said John Mitchell ; that at the time said John Mitchell so demanded said child of said Mary Stage, formerly Mary Rittiker, he read to her an order made by said county superintendents of the poor, pursuant to said compromise or arrangement, requiring her to give up possession of said child to said John Mitchell, to be by him supported and maintained ; and that this demand was made on or about August 6, 1863 ; and that after that date the said John Mitchell did not pay and has not paid any sum whatever upon the bond herein set forth ; but that up to that date all sums required by said bond to be paid were duly paid.

The referee found as conclusions of law : That the said compromise and arrangement made by and between said John Mitchell and the superintendents of the poor of the county of Wayne, released said John Mitchell from all further liability on the bond given by him to the people for the support of said bastard child, and that the defendants in this action were entitled to judgment against the plaintiffs for their costs ; and he ordered and directed judgment to be entered accordingly. And from such judgment the plaintiffs appealed.

*Jacob B. Decker,* for the appellants.

*Wm. Clark,* for the respondent.

*By the Court,* Johnson, J.   Conceding the order of filia-
tion and the bond in question to have been within the juris-
diction of the superintendents of the poor of Wayne county,
they made no such compromise and arrangement with the
defendant Mitchell, relative to the support of the bastard
child, as the statute contemplates.   What they attempted to
do was a mere evasion of the object and intent of the statute,
and a fraud upon its provisions.   They had, most clearly, no
authority or power whatever to discharge the putative father
from the obligation he had entered into with the town, and
relieve him from it altogether, without some compensation or
equivalent which would effectually assure the support and
maintenance of the child in the manner contemplated by the
statute, or at least tend to assure such support.   By section
69 of the statute for the support of bastards, (1 *R. S.* 656,)
the superintendents of the poor of any county are authorized
to make such compromise and arrangements with the putative
fathers of any bastard children, within their jurisdiction, re-
lative to the support of such children, as they shall deem
equitable and just, and *thereupon* to discharge such putative
fathers from all liability for the support of such bastards.
The compromise and arrangement must relate wholly to the
support of the child, and in no respect to the depriving it of
support.   If by the arrangement nothing is taken or secured
for the support beyond contingency, the superintendents
exceed their powers, and the discharge is void.   The nature
and kind of compromise contemplated will be more fully
seen by referring to the act amending the law for the support
of bastards, passed in 1838, (*chap.* 202,) which is incorpo-
rated in the later editions of the revised statutes, as sections
74 and 75 of the act for the support of bastards.   (1 *R. S.*
656.)   The first section of this act provides that whenever
such a compromise shall be made, the mother of the child,
upon giving security for its support, "shall be entitled to
receive the moneys paid or secured by such putative father as
the consideration of such compromise."

The second section provides that in case the mother shall be unable to give such security but shall be willing to nurse and take care of the child, she shall be paid the same weekly allowance for nursing and taking care of the child, out of the moneys paid by the father, *on such compromise,* as he shall have been liable to pay by the order of filiation. These last provisions of the law were wholly ignored or disregarded by the superintendents in the compromise they undertook to make. The law always secured to the mother of a bastard child its care, custody and possession. Such was the common law, and our statutes pursue the same policy in all cases where the mother chooses to keep her child. The common law never gave the putative father of such child any right to its custody, and no provision of our statute, secures to him any such right. (*Robalina* v. *Armstrong,* 15 *Barb.* 247.) He is under no legal obligation for its support and maintenance, nor can he be chargeable with it in any other way than than that provided by the statute. (*Moncrief* v. *Ely,* 19 *Wend.* 406. *Birdsall* v. *Edgerton,* 25 *id.* 619.) Unless indeed upon his express promise, founded upon the order of filiation. It will be seen, therefore, that the compromise which the superintendents undertook to make in this case, was in direct and plain contravention, not only of the letter of the statute, but of its entire spirit and policy, also. In fact they made no compromise with the putative father, or arrangement of any kind, for the support of the child. He neither paid any thing, nor gave any obligation to pay any thing, or to keep and support the child himself. He paid nothing and promised nothing. The entire scope and effect of the proceeding was to deprive the mother of the right which both the common law and the statute secures to her, and in case she refused to relinquish it, to deprive, absolutely, the child of all the means of support which the law had secured to it. To call this a compromise under the sanction of the statute, would be an abuse of language. If she refused to give up the child to him he was to be discharged from his bond for its support. This was the sole consideration of the agreement to

discharge, for he agreed to nothing. If it could be said that the order of the superintendents and the copy of the record afforded some evidence of his parol promise to take and support the child, it was only a promise upon the condition that the mother should give up the child to him. Her clear right was, to have and retain the custody and care of the child, in case of a compromise. The condition being one which neither party had the right to make, or the power to fulfill, as against the mother, would scarcely support the promise, if otherwise unobjectionable. Besides, the statute does not contemplate any such conditional arrangement. But the only promise there was, on his part, was rendered entirely nugatory, by the refusal of the mother to deliver the child to him upon this unauthorized and void order of the superintendents, and the discharge has nothing to support it, but the refusal of the mother to yield to an unlawful demand.

The superintendents had no power to discharge the putative father upon any such ground ; and his obligation given in pursuance of the order of filiation, remains in full force as though no discharge had ever been attempted.

I am also inclined to the opinion that the county superintendents had no jurisdiction in the matter. The several towns in Wayne county take care of their own poor. The poor there, are a town, and not a county charge. The town, here, had secured the maintenance and support of the bastard child in question, by regular proceedings under the statute, and I much doubt whether it was competent for the superintendents in such a case to interfere and change or modify the security thus obtained by the town for its own exclusive benefit. It is unnecessary, however, in the view I have taken, to pass upon this question. It is enough that there is no valid discharge from the obligation. The plaintiffs were entitled to recover the full penalty of the bond. The judgment must therefore be reversed, and a new trial ordered, costs to abide the event.          Judgment accordingly.

[Monroe General Term, September 5, 1865. *Johnson, E. Darwin Smith* and *James C. Smith,* Justices.]